# In the United States Court of Federal Claims

No. 23-1756

Filed: April 4, 2024[†]

| | |
|---|---|
| **ACCELGOV, LLC,** | |
| *Plaintiff*, | |
| v. | |
| **THE UNITED STATES,** | |
| *Defendant*, | |
| and | |
| **ASRC FEDERAL CYBER, LLC,** | |
| *Intervenor-Defendant.* | |

*W. Brad English,* with *Emily J. Chancey* and *Taylor R. Holt*, Maynard Nexsen PC, Huntsville, AL, for Plaintiff.

*Laura Offenbacher Aradi*, Trial Attorney, with *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *William J. Grimaldi*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

*Damien C. Specht*, with *James A. Tucker* and *Victoria Dalcourt Angle*, Morrison & Foerster LLP, Washington, D.C., for Intervenor-Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

This bid protest considers whether the Defense Health Agency ("DHA") erred when it awarded ASRC Federal Cyber, LLC ("ASRC"), a firm fixed price contract for information

---

[†] This Order was originally filed under seal on March 20, 2024, (ECF No. 71). The Court provided parties the opportunity to review this Opinion for any proprietary, confidential, or other protected information and submit proposed redactions. The proposed redactions were filed on March 27, 2024, (ECF No. 73), and are accepted by the Court. Thus, the sealed and public versions of this Opinion differ only to the extent of those redactions, the publication date, and this footnote.

technology services. Disappointed offeror, AccelGov, LLC ("AccelGov"), challenges the United States on three grounds: (1) DHA abused its discretion by failing to hold discussions with offerors; (2) DHA arbitrarily and irrationally evaluated proposals to determine AccelGov's technical approach was unacceptable; and (3) DHA unreasonably evaluated AccelGov's experience and personnel. AccelGov argues DHA conducted a flawed best value determination and requests injunctive and declaratory relief stating that DHA's evaluation and award lacked a rational basis, was arbitrary, capricious, and contrary to applicable statutes and regulations.

The Court determines that DHA reasonably reviewed proposals and made its award decision based on a best value tradeoff. Accordingly, the Court denies AccelGov's Motion for Judgment on the Administrative Record, (Pl.'s MJAR, ECF No. 32), and grants the United States' and ASRC's Cross-Motions for Judgment on the Administrative Record, (Def.'s xMJAR, ECF No. 51; Int.-Def.'s xMJAR, ECF No. 50).

## I. Background

The procurement involves a Federal Acquisition Regulations ("FAR") Subpart 8.4 firm fixed price contract for DHA Enterprise Network Support Services ("DENSS"), consolidating three prior contracts to provide deployment, engineering, and sustainment services for Department of Defense medical facilities using Local Area Network ("LAN") and Wireless Local Area Network ("WLAN"). (Administrative Record "AR" 3, 61, ECF Nos. 27, 48, 56).[1] The Solicitation[2] stated that the contract's objective was "to provide technical support that includes expertise to design, engineer, develop, modify, upgrade, test, troubleshoot, implement, support, administer, sustain, maintain security, and/or conduct change management practices for all modules within each product as identified within the Performance Work Statement [("PWS")], and prepare and conduct product decommissioning activities, where applicable." (AR 4). The Solicitation sought an offeror who proposed the best value for a twelve-month base period with four twelve-month option periods. (AR 3, 127). The Solicitation further explained that DHA would evaluate the value of proposals based on three factors: (1) Past Performance, (2) Price, and (3) Technical. (AR 126). The Solicitation also stated that DHA would trade off "Past Performance against Price for all Technically Acceptable offers, with Past Performance being [s]lightly more [i]mportant than Price." (AR 127).

Factor 1—Past Performance—evaluated offerors' recent and relevant performance and the quality of its products or services to determine if the offeror could successfully execute the contract. (AR 127–28). The Past Performance Ratings ranged from Substantial Confidence to No Confidence. (AR 128–29). Factor 2—Price—considered the proposed level of effort and labor mix, and evaluated whether an offeror's total price was fair and reasonable. (AR 130).

---

[1] The Administrative Record was filed multiple times to account for amendments and corrections. (ECF Nos. 27, 48, 56). However, it maintains a continuous pagination. Thus, the Court will cite to the record using "(AR __)" irrespective of the ECF No.

[2] Solicitation No. HT001123R0045.

Factor 3—Technical—consisted of three subfactors: Technical Approach, Experience & Personnel Qualifications, and Management Approach. (AR 126, 129–30). DHS determined whether the offeror satisfied each subfactor's requirements and assigned an Acceptable or Unacceptable rating to each subfactor as well as the overall Technical factor. (AR 129–30). Proposals rated as Unacceptable for any subfactor received an overall Unacceptable rating and were ineligible for award. (AR 127, 129).

Subfactor 1, Technical Approach, evaluated whether an offeror's proposal satisfied nine technical approach requirements or "Section Instructions" that corresponded with PWS requirements—listed A through I. (AR 121–22, 129–30, 3717–25). The relevant requirements included the offeror's approach to "supporting software [ ] on all DHA owned and operated LAN and WLAN systems, support systems, and tools" (requirement A), "providing LAN/WLAN technical management and support on behalf of [various] projects" (requirement F), and "leading and supporting the planning, design, implementation and integration of programmable LAN and WLAN solutions with current DHA products" (requirement G). (AR 121–22, 129–30).

Subfactor 2, Experience & Personnel Qualifications, assessed whether the offeror's proposed staffing structure, level of effort and labor mix, and personnel would satisfy that subfactor's seven requirements—listed A through G. (AR 122–23, 130). The Solicitation specified that "[a]ll personnel *must* possess the minimum qualifications" and the "labor categories proposed *must* be commensurate" with the subfactor's requirements. (AR 130 (emphasis added)). Subfactor 3, Management Approach, assessed whether an offeror's proposal demonstrated an acceptable approach to requirement, retention of personnel, and chain of command. (AR 130).

In response to the Solicitation, nine offerors including AccelGov, ASRC, ███████████████████████████████████████████████████████ submitted proposals. In relevant part, DHA assigned the following ratings:

|  | Past Performance | Price | Technical |
|---|---|---|---|
| **AccelGov** | Substantial Confidence | ███ | Subfactor 1: Unacceptable<br>Subfactor 2: Unacceptable<br>Subfactor 3: Acceptable<br>Overall: Unacceptable |
| **ASRC** | Substantial Confidence | $30,790,065.76 | Subfactor 1: Acceptable<br>Subfactor 2: Acceptable<br>Subfactor 3: Acceptable<br>Overall: Acceptable |
| ███ | Substantial Confidence | ███ | Subfactor 1: Acceptable<br>Subfactor 2: Acceptable<br>Subfactor 3: Acceptable<br>Overall: Acceptable |
| ███ | Satisfactory Confidence | ███ | Subfactor 1: Unacceptable<br>Subfactor 2: Unacceptable<br>Subfactor 3: Acceptable |

| | | | |
|---|---|---|---|
| | | | Overall: Unacceptable |
| ▇ | Satisfactory Confidence | ▇ | Subfactor 1: Unacceptable<br>Subfactor 2: Unacceptable<br>Subfactor 3: Unacceptable<br>Overall: Unacceptable |
| ▇ | Substantial Confidence | ▇ | Subfactor 1: Unacceptable<br>Subfactor 2: Acceptable<br>Subfactor 3: Unacceptable<br>Overall: Unacceptable |

(AR 3050–51, 3053–54, 3081, 3090–91). DHA determined that ASRC provided the best value and awarded ASRC the contract. (AR 3620–24). AccelGov moved for judgement on the administrative record on November 13, 2023. On November 16, 2023, the United States moved to remand and stay proceedings. (Def.'s Mot. to Remand & Stay of Proceedings, ECF No. 34).[3] Following the remand period, the United States and ASRC filed cross-motions for judgment on the administrative record. This matter is now fully briefed and ripe for a decision on the merits.

## II. Analysis

When deciding a bid protest, the Court "appl[ies] the appropriate [Administrative Procedure Act ("APA")] standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). Under the APA, the Court determines whether the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial." *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013). In other words, the Court must determine whether "(1) the procurement official's decision lacked a rational basis" or "(2) the procurement procedure involved a violation of regulation or procedure." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009).

To decide whether the agency's decision was arbitrary or capricious, the Court determines whether the action was "legally permissible, reasonable, and supported by the facts." *UnitedHealth Mil. & Veterans Servs., LLC v. United States*, 132 Fed. Cl. 529, 551 (2017); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Court may not substitute its own judgment for that of the agency. *UnitedHealth Mil. & Veterans Servs., LLC*, 132 Fed. Cl. at 551. Rather, "[p]rocurement officials have substantial discretion to determine which proposal represents the best value for the government" particularly in the "minutiae of the procurement process[.]" *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed.

---

[3] The United States moved to remand because the Source Selection Authority ("SSA") erroneously documented that DHA held discussions with offerors; those discussions did not occur. The Court granted the motion and during the remand, the United States corrected SSA documentation errors and redacted any reference to discussions between DHA and offerors from the AR. (*See* ECF Nos. 47, 48). Therefore, the Court declines to analyze any argument regarding the SSA's redacted language.

Cir. 1996). This standard is "highly deferential." *CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1354 (Fed. Cir. 2008). But if the agency's decision fails under this standard, the Court determines if the "bid protester was prejudiced by that conduct." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). To establish prejudice, the plaintiff must show "that there was a 'substantial chance' it would have received the contract award but for the [agency's] errors." *Id.* at 1353.

When parties move for judgment on the administrative record, RCFC 52.1 provides a procedure to seek the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Id.* at 1356. Genuine issues of material fact do not preclude judgment on the administrative record, so the Court can resolve questions of fact by referencing the administrative record. *Id.* at 1355–56. Because the Court is bound to the administrative record, it "will not put words in an agency's mouth or invent supporting rationales the agency has not itself articulated." *ENGlobal Gov't Servs., Inc. v. United States*, 159 Fed. Cl. 744, 764 (2022) (quoting *IAP Worldwide Servs. v. United States*, 159 Fed. Cl. 265, 286 (2022)). It follows that the Court is suspect of "any rationale that departs from the rationale provided at the time the procuring agency made its decision." *Sys. Stud. & Simulation, Inc. v. United States*, 152 Fed. Cl. 20, 32 (2020) (quoting *Raytheon Co. v. United States*, 121 Fed. Cl. 135, 158 (2015), *aff'd* 809 F.3d 590 (Fed. Cir. 2015)).

AccelGov challenges DHA's evaluation and award decision as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. (*See generally* Pl.'s MJAR). First, AccelGov argues DHA abused its discretion by failing to hold discussions when seven out of nine offerors received Unacceptable technical ratings. (*Id.* at 16–21). Second, AccelGov argues DHA's evaluation of its Technical Approach was arbitrary and capricious. (*Id.* at 21–30). Specifically, AccelGov argues its proposal addressed requirement A, thus DHA put substance over form when it determined AccelGov's proposed tools were insufficient. (*Id.* at 21–26). AccelGov also argues DHA arbitrarily concluded it could not determine whether AccelGov could satisfy requirement F because it "thoroughly described its approach[.]" (*Id.* at 28–29). AccelGov further contends DHA disregarded parts of its requirement G proposal. (*Id.* at 30). Third, AccelGov argues the DHA's evaluation of its proposed Experience & Personnel Qualifications/Resume subfactor was unreasonable because DHA was "overly stringent" when identifying inconsistencies in AccelGov's proposal and determining that the proposed personnel lacked the necessary education level. (*Id.* at 31–39). AccelGov concludes the Source Selection Authority's ("SSA") award decision was irrational. (*Id.* at 39–41). The United States and ASRC disagree, (*see generally* Def.'s xMJAR; Int.-Def.'s xMJAR); the Court also disagrees with AccelGov.

    A. *DHA was not required to hold discussions with offerors.*

AccelGov argues DHA abused its discretion by failing to hold discussions with all offerors. (*Id.* at 16–21). AccelGov insists DHA should have applied FAR Part 15 "principles" even though the procurement was under FAR Subpart 8.4 because the Solicitation clearly sought competitive proposals. (*Id.* at 16–18). AccelGov asserts that this Court previously applied FAR Part 15 principles to a competitive FAR Subpart 8.4 procurement when fundamental fairness was threatened and should do so again. (*Id.* at 18 (citing *Ernst & Young, LLP v. United States*, 136 Fed. Cl. 475, 517 (2018))). The Court is unconvinced.

5

As an initial matter, the Solicitation was governed by FAR Subpart 8.4,[4] not FAR Part 15. (AR 126 ("Pursuant to FAR Parts 8.4 . . . .")). When interpreting regulations, the Court applies the same interpretive rules used when analyzing the language of a statute. *Boeing Co. v. Sec'y of Air Force*, 983 F.3d 1321, 1327 (Fed. Cir. 2020) (citing *Mass. Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1365 (Fed. Cir. 2015)). Thus, the Court must analyze the plain and ordinary meaning of FAR Subpart 8.4. *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009); *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004), *aff'g* 56 Fed. Cl. 377 (2003) (The Court "begin[s] with the plain language"). FAR Subpart 8.4 does not contain any reference to discussions, *see generally* FAR 8.4, but states that FAR Part 15 is not applicable in FSS procurements. FAR 8.404 (specifying FAR Part 15 "do[es] not apply to [Blanket Purchase Agreements ("BPAs") or orders placed against [FSS] contracts."); *Allied Tech. Grp., Inc. v. United States*, 94 Fed. Cl. 16, 44 (2010) ("FAR 8.404(a) specifically states that FAR Part 15 does not apply to [FSS] procurements.") (quoting *Unisys Corp. v. United States*, 89 Fed. Cl. 126, 140 (2009)). Therefore, under the plain language of FAR Subpart 8.4, DHA was not required to follow requirements from FAR Part 15 and hold discussions. *E.g., Distributed Sols., Inc. v. United States*, 106 Fed. Cl. 1, 15 (2012), *aff'd,* 500 F. App'x 955 (Fed. Cir. 2013) ("under FAR Part 8, [the agency] was under no obligation to hold discussions.").

AccelGov acknowledges that this was a FAR Subpart 8.4 procurement, (Pl.'s MJAR at 16 ("AccelGov knows that the Agency conducted this acquisition under FAR 8.405.")), but argues the Solicitation sought competitive proposals so FAR Part 15 "principles" should have applied instead. (*Id.* at 16–18). In support, AccelGov highlights that the Solicitation used FAR Part 15 language like "best value" and listed the "method of solicitation" as "RFP." (*Id.* (citing AR 86, 127)).[5] This is insufficient. The use of terminology also used in FAR Part 15 does not mandate the incorporation of every provision into this procurement. As explained above, the clear text of the Solicitation showed that it was governed by FAR Subpart 8.4. (*E.g.,* AR 126, 3083 ("This acquisition is being awarded in accordance with [FAR] Part 12 commercial item procurements utilizing FAR Subpart 8.4 for [FSS] acquisitions[.]")). When interpreting a solicitation—as with a regulation—the Court begins with "the plain language of the document." *Banknote Corp. of Am.*, 365 F.3d at 1353. "If the provisions of the solicitation are clear and unambiguous, they must be given their plain and ordinary meaning." *Id.* The Court also "must consider the solicitation as a whole, interpreting it in a manner that harmonizes and gives reasonable meaning to all of its provisions." *Id.* at 1353 (citing *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (en banc)). When the Court looks at the Solicitation's plain language and interprets it as a whole, FAR Part 15 principles do not apply.

Further, the Solicitation expressly stated that DHA "intends to award a competitive firm fixed price task order *without* discussions." (AR 126 (emphasis added)). There is no ambiguity; DHA did not plan to hold discussions with offerors. *See Banknote Corp. of Am.*, 365 F.3d at

---

[4] FAR Subpart 8.4 applies to Federal Supply Schedule ("FSS") procurements.

[5] Elsewhere in the Solicitation "RFQ" is used and the Solicitation plainly states it is a FAR Subpart 8.4 procurement. (*E.g.,* AR 85, 117–19).

6

1353. The Solicitation also reserved DHA's right to hold discussions "if deemed necessary." (AR 126). Here, discussions were not necessary, so they did not occur.

However, AccelGov argues that DHA's decision to not hold discussions is an abuse of DHA's discretion because it prevented all offerors from being treated fairly. (Pl.'s MJAR at 18–20). AccelGov analogizes this procurement to *Ernst & Young* where failure to hold discussions in a competitive FAR Subpart 8.4 procurement prevented the fair treatment of offerors. (*Id.* (citing 136 Fed. Cl. 475, 517)). However, this procurement is distinguishable from *Ernst & Young* where the Court found unfair treatment among offerors when all but one offeror—the incumbent—made identical mistaken assumptions regarding a technical requirement. 136 Fed. Cl. at 516–17. In this procurement. the technically unacceptable offerors failed to satisfy different requirements. For example, AccelGov received an Unacceptable for requirements A, F, and G, (AR 2686–88); ▇ received an Unacceptable for requirements D, F, G, H, and I, (AR 2693–95); ▇ received an Unacceptable for requirements B, C, D, F, H, and I, (AR 2712–15); and ▇ received an Unacceptable for requirements B, C, G, H, and I. (AR 2727–29). Therefore, technically unacceptable offerors did not make identical mistaken assumptions like in *Ernst & Young*.

AccelGov also argues discussions were warranted by implying that ASRC utilized incumbent knowledge to satisfy all technical requirements. (Pl.'s MJAR at 19). Specifically, AccelGov highlights that ASRC had "▇ on its team" and received an Acceptable rating, along with ▇ who claimed "some 'incumbent knowledge.'" (*Id.* (citing AR 384–85, 973)). However, AccelGov fails to provide further evidence that possession of incumbent knowledge is the reason ASRC and ▇ received Acceptable ratings, particularly when ▇ also enjoyed some incumbent knowledge but received an Unacceptable rating. (Pl.'s MJAR at 19, 19 n.4 ("▇ assisted the Agency with other efforts, but that did not help it satisfy the Agency that it could perform the specific requirements for this effort."); AR 2727–29).

Furthermore, as the United States argues, the Court has "long recognized that incumbent contractors may possess inherent competitive advantages, and those 'natural' advantages are generally permissible." *Crowley Gov't Servs., Inc. v. United States*, 158 Fed. Cl. 358, 367 (2022) (collecting cases). It is well-established that "[a]n offeror bears the burden of presenting an adequately written proposal that satisfies the terms of the solicitation." *Poplar Point RBBR, LLC v. United States*, 147 Fed. Cl. 201, 223 (2020) (internal citation omitted); *Mercom, Inc. v. United States*, 131 Fed. Cl. 32, 40 (2017). Here, AccelGov was responsible for any errors in its proposal and has not shown that ASRC or ▇ enjoyed an improper advantage. (*See generally* Pl.'s MJAR at 19–21). Therefore, DHA was not required to correct AccelGov's mistaken assumptions.

Even if DHA was required to apply FAR Part 15 "principles," DHA still complied with FAR Part 15. FAR 15.306(a)(3) provides that "[a]ward may be made without discussions if the solicitation states that the Government intends to evaluate proposals and make award without discussions." As explained above, the Solicitation expressly reserved the Agency's right to hold discussions "if deemed necessary." (*Id.*). FAR 15.306 only requires the agency to document its decision if it determines discussions are necessary. FAR 15.306(a)(3). Therefore, DHA was

under no obligation, even under FAR Part 15, to document its decision to not hold discussions. Accordingly, DHA was not required to hold discussions with offerors.

    B.  *DHA's evaluation of AccelGov's proposal under Technical Subfactor 1 was rational.*

AccelGov argues that DHA's evaluation of its Technical Approach was arbitrary and capricious. (Pl.'s MJAR at 21–30). Specifically, AccelGov challenges DHA's determination that it did not satisfy requirements A, F, and G. (*Id.* at 21–31). First, AccelGov argues that DHA ignored language about software tools, required an unstated level of specificity to upgrade a LAN switch or wireless controller, and required an improper explanation of DHA's multivendor environment under requirement A. (*Id.* at 21–26). Second, AccelGov argues DHA arbitrarily concluded AccelGov's approach to requirement F was insufficiently detailed, as AccelGov "thoroughly described its approach" and included charts and paragraphs "surrounding it." (*Id.* at 26–29). Third, AccelGov asserts it did not misunderstand DHA's "as is" environment and that its solution under requirement G was not dependent on ▇▇▇▇▇▇ architecture. (*Id.* at 29–30).[6] For its part, the United States argues that DHA did not rely on unstated evaluation criteria and properly exercised its discretion to find AccelGov's proposal unacceptable. (Def.'s xMJAR at 35–40). ASRC argues AccelGov's proposal contained deficiencies that rendered its proposal "unacceptable and ineligible for award." (Int.-Def.'s xMJAR at 12). The Court agrees with the United States and ASRC.

This Court routinely holds that contracting officers enjoy "broad discretion with respect to evaluation of technical proposals," and the Court typically does not "second-guess the technical ratings that the source selection committee gave to each offeror." *Info. Scis. Corp. v. United States*, 73 Fed. Cl. 70, 104 (2006) (quoting *Omega World Travel, Inc. v. United States*, 54 Fed. Cl. 570, 578 (2002)); *Mortg. Contracting Servs. v. United States*, 153 Fed. Cl. 89, 126 (2021) ("The court must especially defer to the agency's technical evaluations . . . and other 'minutiae of the procurement process . . . which involve discretionary determinations of procurement officials.'" (quoting *E.W. Bliss Co.*, 77 F.3d at 449)). However, unsuccessful offerors repeatedly ignore this. To again emphasize this important point, agencies exercise broad discretion when determining the scope of an evaluation factor. *Summit Techs., LLC v. United States*, 151 Fed. Cl. 171, 180 (2020) (quoting *PlanetSpace, Inc. v. United States*, 92 Fed. Cl. 520, 536 (2010)). As the disappointed offeror, AccelGov bears the heavy burden of showing that DHA's evaluation lacked a rational basis. *See Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (addressing burden of proof in negotiated procurements). "[T]he test for reviewing courts is to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001) (internal quotation marks and citations omitted). AccelGov fails to bear that heavy burden.

---

[6] AccelGov also argues that it would have "easily remedied" any errors if discussions had occurred. (Pl.'s MJAR at 20–21). However, this is speculative, and, as explained above, DHA was not obligated to discuss those errors with AccelGov. The Court declines to further address how discussions might have altered the procurement.

8

Under requirement A, the Solicitation required offerors to explain how they would "perform upgrades, downgrades, install patches, update software, and install new software on all DHA owned and operated LAN and WLAN systems, support systems, and tools[.]" (AR 121). AccelGov proposed to leverage "available tools (such as, ███████████ or DHA approved tools)." (AR 625). However, DHA determined that AccelGov's approach was "not feasible" because the proposed tools "are not for LAN/WLAN infrastructure components." (AR 2686). AccelGov argues that its use of "such as" signifies the tool list was "non-exhaustive" and its inclusion of "DHA approved tools" indicates an openness to other tools. (Pl.'s MJAR at 23). AccelGov continues that because AccelGov also listed ten "[t]ools and [t]echnologies" for its overall ITIL-based service delivery framework, it was unreasonable for DHA to conclude AccelGov would only use ███████████. (Pl.'s MJAR at 23–24 (citing AR 624)). The Court is unconvinced.

AccelGov merely disagrees with DHA's rational conclusion that AccelGov would only use those listed tools. *See Banknote Corp. of Am., Inc.*, 56 Fed. Cl. at 384 ("[A]n offeror's mere disagreement with the agency's judgment concerning the adequacy of the proposal is not sufficient to establish that the agency acted unreasonably") (internal citation omitted). An agency is not required to scour a proposal and intuit an offeror's meaning. *See PGBA, LLC v. United States*, 60 Fed. Cl. 196, 209–10 (2004) (finding weakness when "less-than-thorough proposal"), *aff'd* 389 F.3d 1219 (2004). As explained above, AccelGov—as offeror—bears the burden of presenting an adequately written proposal. *Poplar Point RBBR, LLC*, 147 Fed. Cl. at 223. In its proposal, AccelGov listed two tools and did not specify the "DHA approved tools" it could use. (AR 625). Therefore, it was reasonable for DHA to determine AccelGov would only use those proposed tools that were also incompatible and insufficient to meet DHA's needs. *See UnitedHealth Mil. & Veterans Servs., LLC*, 132 Fed. Cl. at 551.

Furthermore, DHA determined that AccelGov provided insufficient details for how it would upgrade a LAN switch or wireless controller and address DHA's multi-vendor environment. (AR 2686). Regarding both insufficiencies, AccelGov asserts the Solicitation did not require that level of specificity. (Pl.'s MJAR at 25–26). Although agencies must evaluate proposals and make awards based on the solicitation's stated criteria, *Banknote Corp. of Am.*, 56 Fed. Cl. at 377–78, agencies also have "broad discretion" when evaluating technical proposals. *Red Cedar Harmonia, LLC v. United States*, 840 F. App'x 529, 532–33 (Fed. Cir. 2020). "[A] solicitation need not identify each element to be considered by the agency during the course of the evaluation where such element is intrinsic to the stated factors." *Banknote Corp. of Am.*, 56 Fed. Cl. at 387. Under requirement A, offerors needed to address LAN and WLAN systems and support systems. (AR 121). DHA determined that to demonstrate an understanding of those systems, offerors needed to include detailed explanations on how the offeror would upgrade a LAN switch or wireless controller and work in multi-vendor environments. (*See* AR 121, 179, 2686). There is no evidence that the agency violated its discretion by doing so. AccelGov fails to demonstrate how this determination falls outside DHA's broad discretion and merely challenges shortcomings identified in its proposal. (*See* Pl.'s MJAR at 23–24); *Banknote Corp. of Am., Inc.*, 56 Fed. Cl. at 384. Accordingly, the Court will not disturb DHA's evaluation of AccelGov under requirement A.

Under requirement F, offerors were required to describe their approach to LAN/WLAN modernization and project management support for multi-year projects. (AR 121). DHA

determined AccelGov's approach was unacceptable because it provided insufficient details and "does not specifically say what the process entails." (AR 2687). DHA further specified that the "lack of information" provided by AccelGov left DHA "unable to determine if this management technique will work for these requirements." (AR 2687). Once more, AccelGov argues DHA acted arbitrarily by requiring an unstated level of detail and that its four-step approach was "well-organized" and "thoroughly detailed." (Pl.'s MJAR at 28–29). But again, the Court is unconvinced.

In bid protests, it is not the role of the Court to second-guess the agency's discretionary determinations, particularly regarding technical evaluations. *Off. Design Grp. v. United States*, 951 F.3d 1366, 1373 (Fed. Cir. 2020) (rejecting protestor argument that would "give a court free reign to second-guess the agency's discretionary determinations underlying its technical ratings."). Rather, the Court determines whether the agency evaluated the proposals and explained a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). DHA explained that AccelGov's response was insufficient such that DHA could not determine if AccelGov could even satisfy requirement F. (AR 2687). Therefore, DHA did not act arbitrarily and capriciously because DHA explained why it awarded AccelGov an unacceptable rating for requirement F. Accordingly, the Court will not second-guess that technical evaluation.

Under requirement G, offerors were required to describe how they would "lead and support the planning, design, implementation and integration of programmable LAN and WLAN solutions with current DHA products." (AR 121). Critically, DHA determined AccelGov's approach was unacceptable because AccelGov's solution was ███████ and "DHA did not request a ███████████" solution. (AR 2687). In other words, DHA found that AccelGov fundamentally misunderstood requirement G. (*See id.*). However, AccelGov argues its solution was not dependent on ███████ and that in the following three pages AccelGov provided a detailed approach that was not dependent on ███████████. (Pl.'s MJAR at 29–30). This too, is unavailing.

AccelGov highlights three sentences from its proposal that do not invoke ███████, including that AccelGov would use "a comprehensive network design strategy tailored to the DHA's specific requirements," to conclude its approach was not ███ dependent. (*Id.* (citing AR 640–42)). But merely stating AccelGov would work to satisfy DHA's requirements is insufficient; the Solicitation asked offerors to "describe" their approach and techniques. (AR 121). Therefore, some level of specificity was required. *See Describe*, Oxford English Dictionary, https://www.oed.com/dictionary/describe_v?tab=meaning_and_use#6991333 (last visited Mar. 14, 2024) (defining "describe" as "to portray in words"). AccelGov's perfunctory language does not overcome its other proposal language that states it would offer "solutions with ███████████ to deliver exceptional programmable LAN/WLAN services[.]" (*Id.*; AR 640). Accordingly, AccelGov fails to demonstrate that DHA unreasonably evaluated its Technical Approach to requirement G. Because AccelGov failed to demonstrate that DHA arbitrarily evaluated AccelGov under Subfactor 1, the Court will not evaluate prejudice. *Bannum, Inc.*, 404 F.3d at 1353.

  *C. DHA's evaluation of AccelGov's proposal under Technical Subfactor 2 was reasonable.*

  AccelGov argues the DHA's evaluation of its proposed Experience & Personnel Qualifications/Resume subfactor was unreasonable. (Pl.'s MJAR at 31–39). Specifically, AccelGov argues DHA was "overly stringent and unreasonable" when it identified inconsistencies in AccelGov's proposal and found it unacceptable. (*Id.* at 31–33). AccelGov concedes it provided an inconsistent number of personnel in its proposal, but asserts those errors were minor and could have been remedied if DHA read its proposal as a whole. (*Id.* at 32–37). AccelGov also acknowledges its proposed Principal Network Architect did not have the requisite education level but argues that should not make its proposal ineligible. (*Id.* at 37–39). The United States and ASRC disagree, (Def.'s xMJAR at 27–34; Int-Def.'s xMJAR at 8–12); so does the Court.

  As stated above, offerors bear the burden of submitting an adequately written proposal. *Poplar Point RBBR, LLC*, 147 Fed. Cl. at 223. The agency "is not expected to hunt for potentially responsive information that is not included or not adequately presented in the relevant section of an offeror's proposal." *AccelGov, LLC v. United States*, 164 Fed. Cl. 345, 360 (2023); *CACI, Inc.-Fed. v. United States*, 158 Fed. Cl. 1, 19 (2021) ("Agencies must indeed review the whole proposal, but they are not compelled to comb the record for information that an offeror does not otherwise adequately present through a well-written proposal."), *vacated on other grounds*, 67 F.4th 1145 (Fed. Cir. 2023).

  In its proposal, AccelGov included—and DHA noted—inconsistencies regarding the number of personnel. (AR 2689). For example, AccelGov proposed four different numbers of total personnel: ▮ people under Section 2.1 (AR 666 ("the DENSS contract which requires [▮] personnel ([▮] key and [▮] non-Key personnel) in total"), ▮ people in Table 2.2. (AR 670–71), ▮ people in Table 2.3, (AR 671–73), and ▮ people in Figure 3.3-1, (AR 708). AccelGov also proposed an inconsistent number of engineers. (AR 671, 708). The Solicitation required two Senior Wireless Engineers who were designated as "key personnel." (AR 270–72). In Table 2.2 AccelGov listed ▮ total wireless engineers (no senior designation), (AR 671), but in Figure 3.3-1 identified ▮ Senior Wireless Engineers and provided their resumes. (AR 695–701, 708). DHA explained that this lack of consistency made it hard to determine whether AccelGov could meet personnel requirements and satisfy performance. (AR 2688–89). Accordingly, AccelGov must reap the consequences; DHA need not reconcile AccelGov's inconsistencies.

  Furthermore, the Solicitation expressly required the proposed Principal Network Architect—considered key personnel for performance—to have a master's degree. (AR 292 (listing educational qualification as a "master's degree" and "[fifteen] years or more" experience)). The Solicitation also stated, "[a]ll key personnel *shall* possess at least the minimum qualification as specified in the PWS[.]" (AR 260 (emphasis added)). When a solicitation uses "shall," that provision is mandatory. *Gilda Indus., Inc. v. United States*, 622 F.3d 1358, 1364 (Fed. Cir. 2010) ("The word 'shall' generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive") (internal citation omitted). AccelGov's proposed Principal Network Architect was required to have a master's degree;

11

AccelGov concedes he did not. (Pl.'s MJAR at 37–39). Therefore, DHA conformed with terms of the Solicitation and found this inadequate level of education unacceptable. (AR 2689).

AccelGov also argues that because its proposed Principal Network Architect has ▇ years of experience, he "can do the job" without the requisite education. (Pl.'s MJAR at 38–39). AccelGov contends the discrepancy between its Principal Network Architect's education level and experience warrants a negative finding but not an unacceptable rating. (*Id.*). However, this is yet another disagreement with DHA's judgment and does not engage with this Court's standard of review. *Glenn Def. Marine (ASIA), PTE Ltd.*, 720 F.3d at 907. ("In a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial.").

Further, the time to raise that argument has passed. As the United States argues, AccelGov waived its right to contest the educational requirement. (Def.'s MJAR at 33–34). The Federal Circuit held that in bid protests, protestors waive the right to challenge solicitation terms if they fail to raise objections before award. *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1382 (Fed. Cir. 2012) (discussing applicability of *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1315–16 (Fed. Cir. 2007)); *see also Medline Indus., Inc. v. United States*, 155 Fed. Cl. 522, 537 (2021) (permitting claim because pre-award challenge). Therefore, AccelGov waived its right to challenge the Principal Network Architect's educational requirement. Accordingly, it was reasonable for DHA to assign AccelGov an Unacceptable rating for its Experience & Personnel Qualifications/Resume subfactor.

### D. The SSA's award decision was rational.

AccelGov argues the SSA's award decision was irrational. (Pl.'s MJAR at 39–41). First, AccelGov contends the decision was "infected" by the technical evaluation errors listed above. (*Id.* at 39–40). Second, AccelGov argues the SSA's analysis relied on two faulty premises: that the agency found ▇'s prices to be fair and reasonable, and discussions occurred. (*Id.* at 40–41). Because the United States corrected the AR during remand, the Court will not address AccelGov's discussion argument. For its part, the United States argues DHA's technical decisions were reasonable and properly documented and the SSA conducted a best value tradeoff between two technically acceptable offerors, finding that ASRC proposed the best value. (Def.'s xMJAR at 40–42). ASRC argues that none of AccelGov's arguments overcome the deficiencies in AccelGov's proposal, so AccelGov cannot establish prejudice. (Int.-Def.'s xMJAR at 17). The Court is again persuaded by the United States and ASRC.

First, as explained above, DHA properly considered AccelGov's proposal, documented its evaluation, and exercised its discretion to find AccelGov's proposal unacceptable. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (requiring agencies to form a "rational connection between the facts found and the choice made."). Thus, the SSA did not rely on "fundamentally flawed and arbitrary" evaluation ratings to make its award decision. (Pl.'s MJAR at 39). Again, AccelGov's arguments merely disagree with DHA's judgment about the adequacy of its proposal. *See Banknote Corp. of Am., Inc.*, 56 Fed. Cl. at 384. The Court is satisfied that the technical evaluation was rational, and was not arbitrary, capricious, and contrary to applicable statutes and regulations. *Weeks Marine, Inc.*, 575 F.3d at 1358.

Second, AccelGov properly identifies an error in the SSA's tradeoff analysis. (Pl.'s MJAR at 40–41). Under Factor 2 – Price, the contracting officer was required to determine that the offeror's total price was fair and reasonable in accordance with FAR 8.405-2. (AR 130). FAR 8.405-2 provides that:

> The ordering activity shall evaluate all responses received using the evaluation criteria provided to the schedule contractors. The ordering activity is responsible for considering the level of effort and the mix of labor proposed to perform a specific task being ordered, *and for determining that the total price is reasonable*. Place the order with the schedule contractor that represents the best value.

(Emphasis added). During its evaluation, DHA determined that six offerors proposed fair and reasonable prices, but that six did not include ▬. (AR 3072 (finding AccelGov, ▬, ASRC, ▬▬▬▬▬▬▬▬▬▬'s proposed prices fair and reasonable)). Nonetheless, the SSA proceeded to conduct a best value tradeoff analysis between the only two technically acceptable offerors—ASRC and ▬. (AR 3092–93, 3623–24 ).

However, AccelGov fails to show it was prejudiced by the SSA conducting a best value tradeoff between ASRC and ▬. (Pl.'s MJAR at 41–43). To show prejudice, the plaintiff must demonstrate it had a "substantial chance" of receiving the contract "but for" the agency's errors. *Bannum, Inc.*, 404 F.3d at 1353. The Solicitation explicitly provided that "[a]n Unacceptable rating under any subfactor will result in an overall Unacceptable rating and render the quote unawardable." (AR 129). In other words, failure to satisfy mandatory requirements for even one subfactor renders a proposal ineligible for award. Thus, because AccelGov's proposal was riddled with inconsistencies and DHA was under no obligation to correct any errors through discussions, AccelGov did not have a substantial chance of award. *See Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). Accordingly, the Court will not second guess DHA's best value determination and finds that AccelGov was not prejudiced by the agency's tradeoff analysis.

### E. *AccelGov fails to satisfy the requirements for injunctive relief.*

AccelGov moved for a preliminary injunction on February 13, 2024, to prevent ASRC from proceeding with performance. (Mot. for Prelim. Inj., ECF No. 65). For the foregoing reasons, the Court verbally denied the Motion. (Feb. 15, 2024 Tr. at 7:20–23 ("The Court is prepared at this time to deny the preliminary injunction . . . because I believe [AccelGov] has not demonstrated a likelihood of success on the merits[.]"), ECF No. 69).

In its motion for judgment, AccelGov also seeks an injunction to permanently stop ASRC's performance of the contract, require DHA to hold discussions with offerors, and reevaluate offerors' proposals. (Pl.'s MJAR at 43–45). The Court grants injunctive relief only when the plaintiff succeeds on the merits of the case. *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004) (explaining that to issue permanent injunction, the court must consider whether (1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a

grant of injunctive relief). AccelGov fails on the merits, so the Court is unable to award injunctive relief and need not analyze the remaining factors for injunctive relief. *Int'l Res. Recovery, Inc. v. United States*, 64 Fed. Cl. 150, 164 (2005) ("A plaintiff that cannot show that it will actually succeed on the merits of its claim cannot prevail on its motion for injunctive relief.").

### III. Conclusion

Accordingly, the Court **DENIES** AccelGov's Motion for Judgment on the Administrative Record, (ECF No. 32), and **GRANTS** the United States' and ASRC's Cross-Motions for Judgment on the Administrative Record, (ECF Nos. 50, 51).

The parties shall meet and confer and file a joint status report proposing redactions to this memorandum opinion by **April 3, 2024**, to allow the Court to file a public version of the opinion.

The Clerk is **DIRECTED** to enter judgment for Defendants. Each party shall bear their own costs.

**IT IS SO ORDERED.**



s/   David A. Tapp
DAVID A. TAPP, Judge